UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TERESA GUEVARA,<br><br>      Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner<br>of Social Security,<br><br>      Defendant. | ) No. CV-09-3115-JPH<br>)<br>)<br>) ORDER GRANTING DEFENDANT'S<br>) MOTION FOR SUMMARY JUDGMENT<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

BEFORE THE COURT are cross-motions for summary judgment noted for hearing without oral argument on March 4, 2011 (Ct. Rec. 17, 24). Attorney Thomas Bothwell represents Plaintiff; Special Assistant United States Attorney Willy Le represents the Commissioner of Social Security (Commissioner). The parties have consented to proceed before a magistrate judge (Ct. Rec. 7). After reviewing the administrative record and the briefs filed by the parties, the court **GRANTS** Defendant's Motion for Summary Judgment (Ct. Rec. 24) and **DENIES** Plaintiff's Motion for Summary Judgment (Ct. Rec. 17).

### JURISDICTION

Plaintiff protectively filed an application for supplemental security income (SSI) benefits on February 27, 2004, alleging disability as of November 4, 2001 (Tr. 69-71). The application was denied initially and on reconsideration (Tr. 33-36, 39-41).

At a hearing before Administrative Law Judge (ALJ) Mary Reed on June 22, 2006, plaintiff, represented by counsel, and a vocational expert testified (Tr. 566-599). On March 26, 2007, the ALJ issued an unfavorable decision (Tr. 14-26). The Appeals Council denied Ms. Guevara's request for review on September 21, 2009 (Tr. 5-7). Therefore, the ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review pursuant to 42 U.S.C. § 405(g) on November 24, 2009 (Ct. Rec. 1, 4).

<strong>STATEMENT OF FACTS</strong>

The facts have been presented in the administrative hearing transcript, the ALJ's decision, the briefs of both plaintiff and the Commissioner, and are briefly summarized here.

Plaintiff was 44 years old when she applied for benefits and 47 on the date of the ALJ's decision (Tr. 24, 571). She quit school in tenth grade due to pregnancy (Tr. 84, 304). Ms. Guevara has worked as a kitchen helper and hospital cleaner. She stopped working in 2001 after a knee injury and subsequent surgery in 2002 (Tr. 78, 327, 572, 580-581, 589-591, 598). Plaintiff testified she is unable to work due to depression, anxiety, leg swelling, and back pain (Tr. 573-574). She binges and purges in an effort to lose weight (Tr. 579-580). Plaintiff lives with her 17 year old son (Tr. 577).

During the relevant period reported activities include daily cooking, household chores, sewing, shopping, and visiting family (Tr. 123-124, 172). Plaintiff testified she spends most of the day watching television. She has memory problems and difficulty

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                                    - 2 -

understanding what she reads. Despite plaintiff's 2001 knee injury, she once walked 36 miles at one time after the injury and found it "refreshing" (Tr. 95, 171). Ms. Guevara testified she smoked marijuana daily until September 2005, was clean from September 2005 until three months before the hearing, and smoked marijuana four days before the hearing (Tr. 581-583).

## SEQUENTIAL EVALUATION PROCESS

The Social Security Act (the Act) defines disability as the as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a Plaintiff shall be determined to be under a disability only if any impairments are of such severity that a plaintiff is not only unable to do previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the person is engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). If not, the decision maker proceeds to step two, which determines whether

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                              - 3 -

plaintiff has a medically severe impairment or combination of
impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If plaintiff does not have a severe impairment or combination
of impairments, the disability claim is denied. If the impairment
is severe, the evaluation proceeds to the third step, which
compares plaintiff's impairment with a number of listed
impairments acknowledged by the Commissioner to be so severe as to
preclude substantial gainful activity. 20 C.F.R. §§
404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P
App. 1. If the impairment meets or equals one of the listed
impairments, plaintiff is conclusively presumed to be disabled.
If the impairment is not one conclusively presumed to be
disabling, the evaluation proceeds to the fourth step, which
determines whether the impairment prevents plaintiff from
performing work which was performed in the past. If a plaintiff is
able to perform previous work, that Plaintiff is deemed not
disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At
this step, plaintiff's residual functional capacity (RFC)
assessment is considered. If plaintiff cannot perform this work,
the fifth and final step in the process determines whether
plaintiff is able to perform other work in the national economy in
view of plaintiff's residual functional capacity, age, education
and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v),
416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon plaintiff to establish
a *prima facie* case of entitlement to disability benefits.
*Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v.
Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is

met once plaintiff establishes that a physical or mental impairment prevents the performance of previous work. The burden then shifts, at step five, to the Commissioner to show that (1) plaintiff can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

### STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983)(*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                                    - 5 -

review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989)(*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

### ALJ'S FINDINGS

At step one the ALJ found plaintiff did not engage in substantial gainful activity after onset (Tr. 16). At steps two and three, she found plaintiff suffers from obesity, borderline to low average intellectual functioning, mild depressive disorder, post right knee surgery, and drug and alcohol abuse (DAA), impairments that are severe but do not meet or medically equal a Listed impairment (Tr. 16, 18). The ALJ found plaintiff less than completely credible (Tr. 20-21). At step four, relying on the VE, she found plaintiff's RFC for a range of medium work precludes any

past relevant work (Tr. 24, 146). At step five, again relying on
the VE, the ALJ found plaintiff can work as a dining room
attendant, sandwich maker, vehicle washer, and campground
attendant (Tr. 25, 146-147). The ALJ found plaintiff has not been
disabled as defined by the Social Security Act at any time from
onset through the date of the decision, March 26, 2007 (Tr. 26).

**ISSUES**

Plaintiff contends the ALJ erred when she weighed the medical
evidence and assessed credibility, should have found she meets
Listing 12.05C, and erroneously found there are a number of jobs
she can do (Ct. Rec. 18 at 8-21). The Commissioner asks the Court
to affirm, asserting the ALJ's decision is supported by
substantial evidence and free of legal error (Ct. Rec. 25 at 1-2).

**DISCUSSION**

**A. Psychological limitations**

Plaintiff asserts the ALJ failed to properly credit the
opinions of examiners Santosh Agnani, M.D., and Jay M. Toews,
Ed. D., treating psychiatrist Jonathan Lee, M.D., and several
treating therapists (Ct. Rec. 18 at 9-19). The Commissioner
answers that the ALJ gave specific, legitimate reasons supported
by substantial evidence for the weight she gave these contradicted
opinions (Ct. Rec. 25 at 15-16, 17-18).

Before onset, in August 2001[1], plaintiff was assessed at
Comprehensive Mental Health (CMH)(Tr. 302). She attended one
therapy session and did not return until five months later, in

---

[1]The date of onset is the date plaintiff applied for SSI
benefits, February 27, 2004 (Tr. 14, 26).

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                                    - 7 -

January 2002 (Tr. 312, 327). At CMH, Dr. Lee supervised medication management while Laurel Wetzel, BA, served as case manager and Diane Anthony, MS, provided counseling. On June 1, 2004, Dr. Lee notes plaintiff's diagnoses are PTSD and depressive disorder NOS. On the same date he turned over plaintiff's medication management to Shawn Martini, M.D. (Tr. 363).

Also before onset, in April 2002, Dr. Agnani examined plaintiff. He diagnosed major depression with psychotic features, post-traumatic stress disorder (PTSD), chronic, an eating disorder NOS, and alcohol dependence in early remission (Tr. 329). He did not perform testing. Dr. Agnani notes in the past plaintiff has refused to take prescribed psychotropic medications (Tr. 328

In 2003 and February 2004, treating therapist Ms. Anthony opined plaintiff suffers marked limitations in the ability to understand, remember, and follow complex instructions; learn new tasks; exercise judgment and make decisions; relate appropriately to co-workers and supervisors; interact appropriately in public contacts; tolerate the pressures and expectations of a normal work setting, and care for hygiene and appearance. Plaintiff exhibited paranoid behavior and difficulties with cognitive processing (Tr. 290, 294-295).

In August 2004, Ms. Wetzel diagnosed PTSD and major depressive disorder with psychotic features, and assessed marked and moderate limitations (Tr. 297). In March 2005, she made the same diagnoses and recommended approval for SSI benefits (Tr. 501). Symptoms included fatigue, sleep disturbance, poor appetite with binging, poor concentration, decreased tolerance for stressful situations, difficulty making decisions, low self-

esteem, and flashbacks of trauma (Tr. 501).

In August 2005, therapist Donalyn Hammer, MS, opined plaintiff's impairments prevented her from working (Tr. 502).

After the hearing, in September 2006, Dr. Toews evaluated plaintiff (Tr. 505-523). He diagnosed depressive disorder, NOS with situational components, mild; borderline intellectual functioning; probable malingering; active marijuana abuse, and polysubstance abuse in reported full remission (Tr. 513). Dr. Toews assessed moderate limitations, including plaintiff's ability to complete a normal workday or workweek[2], and a GAF of 60 (Tr. 513-514).

The ALJ considered the opinion of psychologist Allen Bostwick, Ph.D., who reviewed the record and gave his opinion (Tr. 17, 529, 532-560). Dr. Bostwick assessed no limitation in plaintiff's ability to complete a normal workday or workweek, contrary to Dr. Toews' assessment (Tr. 558).

To aid in weighing the conflicting medical evidence, the ALJ evaluated plaintiff's credibility and found her less than fully credible. Credibility determinations bear on evaluations of medical evidence when an ALJ is presented with conflicting medical opinions or inconsistency between a claimant's subjective complaints and diagnosed condition. *See Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005).

Plaintiff asserts the ALJ erred when she found her less than

---

[2]Dr. Toews assessed two additional moderate limitations: in the ability to work near others, and to interact appropriately with the public (Tr. 514-515). The ALJ's RFC includes limitations in these areas (Tr. 19).

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                                    - 9 -

fully credible (Ct. Rec. 18 at 10-15).

The Commissioner answers the ALJ's credibility assessment is correct because there is evidence of malingering; in addition, the ALJ correctly relied on plaintiff's inconsistent statements, lack of objective medical evidence for reported physical symptoms, and daily activities (Ct. Rec. 25 at 6-12). Citing *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162-1163 (9th Cir. 2008), the Commissioner asserts minor deviations in plaintiff's statements about the frequency of past abuse, even if erroneously considered inconsistent statements by the ALJ, do not require reversal because the remaining factors are valid and based on substantial evidence (Ct. Rec. 25 at 11-12).

The Commissioner is correct.

It is the province of the ALJ to make credibility determinations. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). However, the ALJ's findings must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Once the claimant produces medical evidence of an underlying medical impairment, the ALJ may not discredit testimony as to the severity of an impairment because it is unsupported by medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                                    - 10 -

Here, although there is evidence of malingering, the ALJ additionally gave clear and convincing reasons for her credibility assessment. ALJ Reed relied, in part, on malingering, inconsistent statements, lack of objective evidence, and activities inconsistent with claimed severe impairment, when she found plaintiff less than completely credible (Tr. 17, 21).

*Malingering*. Dr. Toews diagnosed probable malingering based on test results (Tr. 513). Allen Bostwick, Ph.D., reviewed Dr. Toews' report and opined MMPI-2 results were "patently invalid" and highly consistent with malingering of psychopathology (Tr. 537-538). Plaintiff's counsel asserts one of the tests Dr. Toews relied on, the Rarely Missed Index (RMI), is an unreliable indicator of malingering (Ct. Rec. 18 at 10-12). In support, counsel cites two studies.

Counsel misapprehends the Court's role. The Court's role on appeal is to determine if the ALJ applied the correct legal standards and if substantial evidence supports her decision. The record contains evidence affirmatively suggesting that plaintiff was malingering. The ALJ did not err. *See Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)(clear and convincing reasons required when there is no evidence affirmatively suggesting that the claimant was malingering).

*Inconsistent statements*. The ALJ observes plaintiff has inconsistently reported her drug use (Tr. 17, 21). *See e.g.*, in November 2001, previous history of drug abuse reported, no use currently (Tr. 197); in February 2003, clean four months (Tr. 336); in September 2005, proud underwent treatment for marijuana abuse and clean 30 days (Tr. 404), and, in September 2006, used

drugs and alcohol heavily until 2002 (Tr. 506). The ALJ notes plaintiff's testimony she has been going to CMH for 12 years is incorrect (Tr. 20). Records reflect plaintiff obtained treatment there 1994-1995, returned for one session in 2001, and attended sporadically thereafter (Tr. 32). A claimant's inconsistent statements support a decision by the ALJ that a claimant lacks credibility. *Thomas v. Barnhart, cite; Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1986).

*Lack of objective evidence*. The ALJ points out the objective evidence does not support plaintiff's subjective complaints (Tr. 21). Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor the ALJ can consider when analyzing credibility. *Burch v. Barnhart*, 400 F.3d 676, 680-681 (9th Cir. 2005). The ALJ is correct. Exams reveal no joint deformity or neurological deficits, despite claimed disabling limitations (Tr. 366, 368, 395, 398-404).

*Activities*. Plaintiff has reported activities during the relevant period have included sewing, cooking, shopping, visiting relatives, and household chores. Significantly, as noted, after suffering a knee injury, Ms. Guevara walked 36 miles (Tr. 21; 171-172, Ex. 2F).

It is well-established that the nature of daily activities may be considered when evaluating credibility. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Plaintiff's activities are consistent with the ability to perform work-like tasks.

The ALJ's reasons for finding plaintiff less than fully credible [in addition to evidence of malingering], are clear, convincing, and fully supported by the record. *See Tommasetti v.*

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                              - 12 -

*Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008)(an ALJ may base an adverse credibility determination on "ordinary techniques of credibility evaluation," "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment," and "the claimant's daily activities")(citation omitted). The ALJ's credibility determination was supported by substantial evidence. See *Thomas v. Barnhart*, 278 F.3f 947, 959 (9th Cir. 2002)(claimant's inconsistent statements to doctors properly considered when determining credibility). Although the evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner where, as here, proper legal standards were applied in weighing the evidence and making the decision. *See Brawner*, 839 F.2d at 433; *Sprague*, 812 F.2d at 1229-1230.

   The ALJ rejected examining doctor Agnani's opinion because very little in the way of objective abnormalities are noted, the difficulties he notes are based on plaintiff's unreliable self-report, and despite dire self-reported symptoms, she is noted to be alert and oriented (Tr. 23, 328).

   The ALJ observes Dr. Lee appeared to rely on plaintiff's unreliable self report because, as with Dr. Agnani's report, "very little in the way of objective abnormalities are noted" (Tr. 23). In 2004, he described plaintiff as alert and cooperative "with no delusions or hallucinations." Plaintiff says she is tired, irritable, and has mood swings. Dr. Lee diagnosed depressive disorder NOS and PTSD (Tr. 23, Ex. 10F). The ALJ points out several months later, plaintiff reports hearing voices and "being clean and sober for 2.5 years." Dr. Lee's only observed

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                              - 13 -

abnormality is "slightly depressed mood" (Tr. 23, Ex. 10F/76). In addition, the ALJ observes later testing casts doubt on plaintiff's credibility, undermining assessments based on unreliable self-reports (Tr. 23).

An ALJ can reject a treating physician's opinion if it is "brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)(citations omitted). The ALJ may properly reject opinions based on a claimant's unreliable self-report. *See Andrews v. Shahala*, 53 F.3d 1035, 1043 (9th Cir. 1995). The ALJ's reasons for rejecting Drs. Lee and Agnani's contradicted diagnoses are specific, legitimate and supported by substantial evidence.

The ALJ gave little weight to Ms. Wetzel's opinion because it was not based on objective testing, she is not an acceptable source as defined by the Act[3], her opinion again appears to be based largely on plaintiff's unreliable self-report, and other medical sources contradict her opinion (Tr. 23). The ALJ rejected Ms. Hammer and Ms. Anthony's opinions for the same reasons (Tr. 23; Tr. 288-295).

Citing *Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996), plaintiff argues treating therapists should be evaluated under the standard of a treating physician because they are part of an "interdisciplinary team." Plaintiff is incorrect. The Social Security Regulation relied upon in the *Gomez* ruling (20 C.F.R. § 416.913(a)(6)) has been amended and no longer includes

---

[3]By definition, only an acceptable medical source is qualified to diagnose a disabling impairment. 20 C.F.R. §§ 404.1527(d),.1513(d),416.927(d),.913(d).

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                                    - 14 -

"interdisciplinary team," under the definition of "acceptable medical sources." See 20 C.F.R. §§ 404.1513(a)(1-5), 416.913(a)(1-5). *Gomez* is not apposite. The opinions of the therapists are lay witness opinions.

Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001), citing *Nguyen v. Chater,* 100 F.3d 1462, 1467 (9th Cir. 1996)(internal citation omitted).

ALJ Reed's reasons for rejecting the treating therapists' opinions are specific and "germane" to each. See *Andrews*, 53 F.3d at 1043 (an ALJ may properly discount a diagnosis based on unreliable self-report); *Thomas,* 278 F.3d at 957 (an ALJ may properly reject an opinion that is inadequately supported by clinical findings).

The ALJ rejected Dr. Toews' assessed moderate limitation in the ability to complete a normal workday or workweek, in part based on Dr. Bostwick's opinion. Dr. Bostwick, uniquely, was able to review plaintiff's entire history. Further, Dr. Toews diagnosed probable malingering. The ALJ opines it is unclear to what extent his assessed limitations are attributable to probable malingering, rather than a recognized impairment, since Dr. Toews opined he assessed limitations due to plaintiff's "victim orientation" and "poor motivation" (Tr. 22). The ALJ elected instead to assess limitations greater than those indicated by Dr. Toews (proffered by Dr. Bostwick) in some areas, giving plaintiff the benefit of the doubt (Tr. 22).

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                                    - 15 -

1    It is the role of the trier of fact to resolve conflicts in

2  evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The ALJ

3  acted in accordance with her responsibility to determine the

4  credibility of the medical evidence, and she gave specific,

5  legitimate reasons for discrediting particular opinions. *See*

6  *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992);

7  *Magallanes v. Bowen*, 881 F.2d 747, 751-752 (9th Cir. 1989).

8    The ALJ properly weighed the medical evidence of

9  psychological limitations and plaintiff's credibility.

10 **B. Step three - Listing 12.05C**

11    Plaintiff asserts ALJ Reed erred when she found Ms. Guevara's

12 impairments do not meet the requirements of Listing 12.05C, mental

13 retardation (Ct. Rec. 18 at 9-10). The Commissioner answers that

14 the ALJ is correct, in part because plaintiff fails to meet her

15 burden of showing purported mental retardation began before age 22

16 (Ct. Rec. 25 at 19-20).

17    Listing 12.05 defines mental retardation as "significantly

18 subaverage general intellectual functioning with deficits in

19 adaptive functioning initially manifested during the developmental

20 period, i.e., the evidence demonstrates or supports onset of the

21 impairment before age 22." 20 C.F.R. part 404, subpart P, appendix

22 1, Listing 12.05.

23    Subsection C, on which plaintiff relies, requires "[a] valid

24 verbal, performance, or full scale IQ of 60-70 and a physical or

25 other mental impairment imposing an additional and significant

26 work-related limitation of function." (Id.)

27    To meet the requirements of Listing 12.05C, an IQ test must

28 be "valid." 20 C.F.R. part 404, subpart P, appendix 1, Listing

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                              - 16 -

12.05C. The ALJ properly considered and evaluated the opinions of Dr. Toews and Dr. Bostwick, and determined that plaintiff's IQ score of 69 was not "valid." As the ALJ noted, Dr. Toews assessed probable malingering and cautioned intellectual test results should be viewed with skepticism (Tr. 22, 510-513). Dr. Bostwick pointed out plaintiff's average to low average range scores on the Wechsler Memory Scale-III, a test highly correlated with intellectual functioning, contradicts Listing level impairment (Tr. 18, Ex. 21F). These are specific and legitimate reasons for discrediting plaintiff's IQ score and finding her impairment does not meet the Listing's criteria. *See Andrews v. Shalala*, 53 F.3d 1035, 1042 (9th Cir. 1995); *Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989). In addition, plaintiff states she completed "special job training, trade or vocational school," a nursing class, in 1998 (Tr. 84). The ALJ came to a reasonable conclusion based on the evidence in the record, and that ends the court's inquiry on appeal. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n. 1 (9th Cir. 2005)("If the record would support more than one rational interpretation, we defer to the ALJ's decision.").

**C. Physical impairments**

Plaintiff alleges the ALJ erred when she assessed an RFC for a range of medium exertion work (Ct. Rec. 18 at 19-20). First, according to the Commissioner, the ALJ's RFC assessment is supported by examining doctor Chester McLaughlin, M.D.'s 2003 RFC for "light to medium work." Second, the Commissioner points out the ALJ's RFC is supported by the opinion of treating doctor Theodore Palmatier, M.D., who concurred in Dr. McLaughlin's opinion (Ct. Rec. 25 at 16-17, citing Tr. 194, 269).

The Commissioner is correct.

In November 2001 plaintiff suffered a right knee sprain. She underwent lateral retinacular release on June 26, 2002 (Tr. 178, 269). The ALJ notes Dr. Palmatier "opined that she could work as a care giver and not do heavy work," consistent with an RFC for medium work (Tr. 24, 269). In the same report, Dr. Palmatier inconsistently released plaintiff to "permanent light duty" and told her "sedentary work is really preferred" (Tr. 269). Plaintiff told him she felt it would be therapeutic to return to some type of work (Tr. 269).

The ALJ considered Dr. Palmatier's internally inconsistent opinion. She found the evidence supported an RFC for medium work because it is supported both by the IME [in March 2003] and by the treating doctor's April 2003 concurrence in the IME's opinion.

The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. The court has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ, even if it might justifiably have reached a different result upon de novo review. 42 U.S.C. § 405 (g).

The ALJ's interpretation of the evidence is reasonable.

ALJ Reed found complaints of foot pain not severe. She observes although plaintiff complained of right foot pain, her exam showed no deformity and by the next exam, she was able to ambulate without difficulty. And, after surgery, plaintiff walked

36 miles (Tr. 18, 402-403). There is no error.

**D. Step five**

Plaintiff asserts the RFC and questions to the vocational expert are erroneous. Citing *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-1176 (9th Cir. 2008), the Commissioner observes plaintiff's step five argument is premised on the same issues the court has already addressed, *i.e.*, the weight the ALJ gave the medical and lay evidence (Ct. Rec. 25 at 20). The Commissioner is correct. Step five error is not established simply by restating arguments that the ALJ improperly weighed the evidence. *Stubbs*, 539 at 1175-1176.

After review the Court finds no harmful error in the ALJ's decision.

**CONCLUSION**

Having reviewed the record and the ALJ's conclusions, this court finds that the ALJ's decision is free of legal error and supported by substantial evidence..

**IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment **(Ct. Rec. 24)** is **GRANTED.**

2. Plaintiff's Motion for Summary Judgment **(Ct. Rec. 17)** is **DENIED.**

The District Court Executive is directed to file this Order, provide copies to counsel for the parties, enter judgment in favor of Defendant, and **CLOSE** this file.

DATED this 4th day of March, 2011.

s/ James P. Hutton
JAMES P. HUTTON
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                    - 19 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                    - 20 -